## Maple Corporation v. Briggman

*Lawrence Prattis,* for plaintiff.

*George D. Gould, David Scholl,* and *Harold I. Goodman,* for defendants.

SPAETH, J., August 4, 1971.—This case arises on

plaintiff's motion for a preliminary injunction. Testimony was heard on July 16th and 19th through 23rd (not throughout each day; rather, the court having other commitments, during each morning). As briefed and argued, constitutional issues of considerable importance and difficulty were presented. However, in the light of the completed record these disappear, so that only limited discussion is appropriate.

Plaintiff, a nonprofit corporation, has pursuant to contracts with the Redevelopment Authority and the Federal Housing Administration, built 26 row houses on a tract in Nicetown for sale to persons of low and moderate income. Defendants, residents of Nicetown, have picketed the houses.

If the picketing were being conducted so as to block prospective purchasers from entering or leaving the sample house, it could be enjoined; and the evidence indicates that, at first, that was the case. The court is convinced, however, particularly by the testimony of Lieutenant George Fencl of the Civil Disobedience Unit of the Philadelphia Police Department, that for most of the time there have been only a few pickets, and that these have conducted themselves peacefully and have not blocked the sample house; indeed, it appears that, generally, the pickets have notified the police in advance of picketing. As this conduct prevailed before plaintiff moved for a preliminary injunction, and as the court understands from the two defendants who testified, and from the arguments of defendants' counsel, that defendants have no intention of blocking the sample house or of acting otherwise than peacefully, injunctive restraint is at present not required.

The situation is somewhat similar with respect to plaintiff's complaint that defendants have caused at least one person to default in her contractual obliga-

tions to plaintiff. Perhaps at the outset this did occur, although the evidence is ambiguous. The defendants who testified, however, have disavowed any desire to interfere with the contractual relationship between plaintiff and anyone who has made a deposit on, or has signed an agreement to buy, one of the houses. This testimony may well represent the afterthoughts of persons sobered by the realization that they may have exposed themselves to financial liability for tortious conduct. Nevertheless, assuming for the sake of discussion that such conduct may be enjoined, as compared to a decision remitting plaintiff to an action at law, under the circumstances injunctive restraint is at present not required.

Plaintiff's counsel has argued with considerable effect that defendants' conduct has been motivated by a malicious desire to harm plaintiff. In fact, the court disbelieves many of defendants' protestations; for example, the court finds that one of defendants did express the desire to bring plaintiff "to its knees"; and as is so often the case, defendants' charges that plaintiff has acted in a high-handed manner are charges by persons themselves high-handed. It is not surprising that plaintiff infers malice when one of defendants, on the basis of the most superficial inspection, announces that the houses had better be torn down than repaired; or when another demands parking spaces, without having measured to see where the spaces would fit, while complaining that the yards are too small, and ignoring a widened street; and other examples might be cited.

Nevertheless, defendants have not acted without some thought. They met with representatives of the Federal Housing Administration. Also, they relied upon expert real estate advice; the fact that the advice appears to have been more provocative than helpful is

not defendants' fault. Moreover, it appears to the court that, to some extent, plaintiff, in responding to defendants, was too ready to cite its compliance with the Federal Housing Administration requirements as compared to responding on the merits. In this connection, the court has been advised that following the conclusion of the testimony, plaintiff and defendants have met to discuss their differences, and it is to be hoped that the discussion will continue until a solution is achieved. As one of defendants in testifying acknowledged, the neighborhood will not be helped if, by picketing, defendants ensure that the houses remain vacant and become so vandalized as to become unsalable.

Whatever may be the outcome of plaintiff's and defendants' discussion, however, the court considers that the record falls short of demonstrating malice. Defendants may well have acted unreasonably, in that they acted on the basis of very little information, and unfairly, in that they have not heeded plaintiff's attempt to explain its position. Nevertheless, their primary purpose has been not to hurt plaintiff but to help their neighborhood. With this finding it becomes unnecessary to decide whether picketing that is peaceful but motivated by malice may be enjoined.

The remaining question is whether picketing that is peaceful but untruthful may be enjoined. Thus, one of the signs said, "Buy Your Lemon Here"; another, "Too Little House Too Much Money," and another, "F.H.A. Approved Ha! Ha!" Assuming these statements to be untruthful rather than merely argumentative expressions of opinion, they remain within the area of protected speech. See Organization For A Better Austin v. Keefe, 39 U.S.L.W. 4577 (May 17, 1971), where the court stated:

"It is elementary, of course, that in a case of this

kind the courts do not concern themselves with the truth or validity of the publication": Id. at page 4578.

## ORDER

And now, August 4, 1971, plaintiff's motion for a preliminary injunction is denied.